**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| DESHAWN SMITH, | ) No. ED CV 08-1131-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 29, 2008, seeking review of the Commissioner's denial of her application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 18, 2008, and November 7, 2008. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 29, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on April 24, 1970. [Administrative Record ("AR") at 73, 93.] She has a tenth grade education [AR at 10, 12-13, 84], and past relevant work experience as a caretaker and a phone operator. [AR at 78-80.]

On November 23, 2005, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since September 1, 2002, due to depression, and back and joint problems. [AR at 77-106, 124-29.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 31-32, 45-57.] A hearing was held on August 31, 2007, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 5-30.] A vocational expert also testified. [AR at 28-29.] The ALJ determined that plaintiff was not disabled. [AR at 33-43.] Plaintiff requested review of the hearing decision. [AR at 4.] When the Appeals Council denied plaintiff's request for review on July 25, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 1-3.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to

perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since November 23, 2005, the date of the application. [AR at 38.] At step two, the ALJ concluded that plaintiff has the "severe" impairment of lumbar back pain.[1] [Id.] At step three, the ALJ determined that plaintiff's impairment does not meet or equal any of the impairments in the Listing. [AR at 39.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to "perform light work[3] as specified in the hypothetical question posed to the vocational expert."[4] [AR at 39.] At step four, the ALJ concluded that plaintiff was not capable of performing

---

[1] The ALJ also concluded that "[plaintiff] alleged depression but she does not have a severe mental impairment." [AR at 38.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

[4] At the hearing on August 31, 2007, the ALJ posed the following hypothetical question to the vocational expert:

> [L]et's suppose there's an individual that has a 10th-grade education, can read and write simple English, is limited to a light range of work, and is limited to simple, repetitive tasks . . . , and no intensive personal interactions, and no dealing with the public, and can only be working around two or three other people, but no teamwork -- teamwork jobs.

[AR at 28.]

her past relevant work. [AR at 42.] At step five, the ALJ found, based on the vocational expert's testimony and application of Medical-Vocational Rule 202.17, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 42.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 42-43.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) failed to properly consider the treating physician's opinion regarding the severity of plaintiff's depression and bipolar disorder[5]; (2) failed to properly consider the treating physician's opinion regarding plaintiff's diagnoses of major depression and psychosis; (3) failed to properly consider the severity of plaintiff's depression and mental impairment; (4) failed to properly consider plaintiff's obesity; (5) failed to properly consider the lay witness testimony; and (6) failed to pose a complete hypothetical question to the vocational expert. Joint Stipulation ("Joint Stip.") at 2-3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION[6]**

Plaintiff contends that the ALJ failed to properly consider the treating physician's opinion. Specifically, plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician, Dr. Ochuko Diamreyan. Joint Stip. at 3-4, 9-10.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

---

[5] Aside from mentioning bipolar disorder in the heading of this issue in the Joint Stipulation, plaintiff offers no discussion of bipolar disorder in the body of the document. See Joint Stip. at 2-3. Further, plaintiff does not allege that she suffers from bipolar disorder in the application documents, and the Court is unaware of a diagnosis of bipolar disorder in the medical records. As such, the Court does not address bipolar disorder in this Order.

[6] The first two issues raised by plaintiff in the Joint Stipulation concern the opinion of plaintiff's treating physician (see Joint Stip. at 3-4, 9-10), and thus the Court herein will combine its consideration of these issues.

5

examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability.  See Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).

"'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'"  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830.  Where the treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[7] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Dr. Diamreyan treated plaintiff for well over two years.  On May 12, 2005, Dr. Diamreyan performed an initial evaluation of plaintiff.  [AR at 267-70.]  Dr. Diamreyan noted that plaintiff's

---

[7] Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1 mood was depressed, perception was paranoid, and thought process was uneven. [AR at 268-
2 69.] Dr. Diamreyan diagnosed plaintiff with major depressive disorder, recurrent, severe with
3 psychosis. [AR at 269.] He assessed plaintiff with a Global Assessment of Functioning ("GAF")
4 score of 40.[8] [Id.] Dr. Diamreyan prescribed psychotropic medications to plaintiff and indicated
5 that plaintiff's prognosis was "guarded." [AR at 270.] Dr. Diamreyan's treatment records from
6 June 17, 2005, through April 19, 2007, indicate that plaintiff heard voices, had paranoid thoughts,
7 was depressed, and was generally compliant with medication. [AR at 257-66.] On June 26, 2007,
8 and July 24, 2007, Dr. Diamreyan performed mental status examinations of plaintiff, in which he
9 noted the following abnormal psychiatric findings: anxiety, depression, delusion, and hallucination.
10 [AR at 255-56.] He diagnosed plaintiff with major depressive disorder, recurrent, severe with
11 psychotic features (296.34).[9] [AR at 255-56.] On August 23, 2007, Dr. Diamreyan noted in a
12 prescription note that "[plaintiff] is my client with a diagnosis of major depressive disorder with
13 psychosis." [AR at 271.]

14 In the decision, the ALJ rejected Dr. Diamreyan's opinion because his May 12, 2005, report
15 is mostly "illegible" and it does not discuss the mental status examination findings on which Dr.
16 Diamreyan relied. [AR at 38.] The ALJ also rejected Dr. Diamreyan's August 23, 2007,
17 prescription note "due to a lack of discussion of any clinical findings to support it." [AR at 39.]
18 Plaintiff contends that the reasons cited by the ALJ are insufficient. The Court agrees with plaintiff.

---

[8] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score in the range of 31 to 40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV at 34.

[9] The current official diagnostic coding system in the United States is the International Classification of Diseases, Ninth Revision, Clinical Modification ("ICD-9-CM"). See DSM-IV at 1. Diagnoses and procedures in the United States are assigned numerical codes, which are listed in the ICD-9-CM. See id. Plaintiff was assessed by Dr. Diamreyan with DSM-IV diagnosis code "296.34," which is the diagnosis code for major depressive disorder, recurrent, severe with psychotic features. [AR at 255-56.] DSM-IV at 369-71, 376, 411-13.

First, the ALJ's conclusions that Dr. Diamreyan's report of May 12, 2005, and prescription note of August 23, 2007, are not supported by clinical findings are insufficient [AR at 38], as they do not reach the level of specificity required in order to reject the opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct.") (footnote omitted); see also McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Moreover, the ALJ's assertions concerning the lack of clinical findings to support Dr. Diamreyan's opinion are not wholly accurate.[10] [AR at 38-39.] It is improper to reject a treating physician's opinion where he provided at least some objective observations and testing in addition to subjective opinions. See Embrey, 849 F.2d at 421; see also 20 C.F.R. §§ 404.1527, 416.927 (the proper weight that an ALJ should give to a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record); Sprague, 812 F.2d at 1232 (when the treating physician diagnosed the claimant with depression, set forth clinical observations supporting the diagnosis, and prescribed psychotherapeutic drugs, the ALJ erred in finding that the claimant had not set forth sufficient evidence to substantiate the mental impairment). Here, on May 12, 2005, Dr. Diamreyan performed an initial mental status examination and found that plaintiff had a depressed mood,

---

[10] The ALJ in the decision gave "little probative weight" to Dr. Diamreyan's diagnosis of major depressive disorder, recurrent, severe with psychosis, and his assessment of a GAF score of 40, based on the above-noted rationales.

8

paranoid perception, and an uneven thought process.[11] [AR at 268-69.] Dr. Diamreyan diagnosed plaintiff with major depressive disorder, recurrent, severe with psychosis, assessed plaintiff with a GAF score of 40, and prescribed psychotropic medications. [AR at 269-70.] Thereafter, Dr. Diamreyan treated plaintiff for an extended period, conducted examinations of plaintiff, and prescribed medications to plaintiff, as evidenced by the progress notes contained in the record. [AR at 255-71.] Indeed, during the course of plaintiff's treatment, Dr. Diamreyan performed further mental status examinations of plaintiff, in which he noted depression, anxiety, delusion, hallucination, paranoia, bad thoughts, and mood swings. [AR at 255-56, 260-66.] Based on his treatment of plaintiff, Dr. Diamreyan continued to diagnose plaintiff with major depressive disorder, recurrent, severe with psychotic features. [AR at 255-56, 263, 265-66, 271.] Not only is Dr. Diamreyan's opinion supported by the findings of the mental status examination performed in connection with his evaluation of plaintiff on May 12, 2005, but it is also supported by Dr. Diamreyan's subsequent treatment records as a whole. Given that there are objective medical findings that lend support to Dr. Diamreyan's opinion that plaintiff suffered from major depressive disorder, recurrent, severe with psychosis, and had a GAF score of 40,[12] the ALJ's rejection of the opinion of Dr. Diamreyan as lacking supporting clinical findings itself lacks substantiation.

In addition, the ALJ's selective reliance on two of Dr. Diamreyan's treatment records to reject his opinion was improper. An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings. See Reddick v.

---

[11] Although the ALJ contends that "most of [Dr. Diamreyan's May 12, 2005,] report is illegible" (see discussion, infra, pp. 10-11), the Court finds that the ALJ's conclusion is not entirely accurate, as Dr. Diamreyan's handwriting in the report is partially legible, albeit difficult to decipher. [AR at 267-70.]

[12] While a GAF score may not have a "direct correlation" to the Social Security severity requirements in the Listings (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that Dr. Diamreyan's assessment of a GAF score of 40 and its implications may be rejected without sufficient reason. See Sorenson v. Astrue, 2008 WL 1914746, at *18 (N.D. Iowa Apr. 28, 2008) (a GAF score is used by medical professionals "'to consider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness'") (citations omitted); see also Blake v. Astrue, 2008 WL 2224847, at *6 (D. Kan. May 27, 2008) (a GAF score of fifty or less may suggest an inability to keep a job).

1  Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (it is impermissible for the ALJ to develop an
2  evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony
3  and reports"); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not
4  obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply
5  selectively choose evidence in the record that supports his conclusions); Robinson v. Barnhart,
6  366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical
7  opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v.
8  Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.
9  1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to
10 justify her conclusion); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not
11 permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence");
12 Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence
13 and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).  Here, the
14 ALJ only discussed Dr. Diamreyan's May 12, 2005, initial evaluation of plaintiff, and his
15 prescription note of August 23, 2007, without any mention of Dr. Diamreyan's progress notes
16 dated June 17, 2005, through July 24, 2007, which lend support to Dr. Diamreyan's opinion.  [AR
17 at 255-66.]  Thus, the ALJ erred by failing to consider Dr. Diamreyan's opinion as a whole, and
18 not giving proper reasons to reject it.

19         Furthermore, the ALJ's finding that Dr. Diamreyan's report of May 12, 2005, was illegible,
20 considered in combination with his conclusion that Dr. Diamreyan's opinion was unsupported by
21 objective medical findings, should have triggered the ALJ's duty to seek further development of
22 the record to determine the basis of Dr. Diamreyan's findings.  See Tonapetyan v. Halter, 242 F.3d
23 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is
24 inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an
25 appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288); see also Cutler v. Weinberger, 516 F.2d
26 1282, 1285 (2nd Cir. 1975) ("Where the medical records are crucial to the claimant's claim,
27 illegibility of important evidentiary material has been held to warrant a remand for further
28 clarification and supplementation."); Miller v. Heckler, 756 F.2d 679, 680-81 (8th Cir. 1985) (finding

that the ALJ failed to develop evidence from the claimant's treating source where the record contained handwritten entries that were in large part illegible); 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. See Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered even when the claimant is represented by counsel); see also Lewin v. Schweiker, 654 F.2d 631, 634 (9th Cir. 1981) (recognizing the need for full and detailed findings of facts essential to the ALJ's conclusion). As a general rule, the record will be considered "inadequate" or "ambiguous" when a treating source has provided a medical opinion that is not supported by the evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citation omitted); see also SSR 96-5p (because treating source evidence is important, when a treating opinion is ambiguous, inconsistent, incomplete, or appears not to be based on objective findings, the ALJ must make "'every reasonable effort'" to recontact the treating medical source for clarification). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).

Here, the record was not sufficiently developed to reject Dr. Diamreyan's opinion to the extent the ALJ believed that the treatment records were undecipherable, did not contain all the necessary information, or did not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. For instance, in light of the ALJ's expressed skepticism toward Dr. Diamreyan's report of May 12, 2005, as being "illegible" and lacking a discussion of the mental status examination findings on which Dr. Diamreyan relied, it would have required little effort on his part to recontact the treating physician to determine the basis of his opinion. See Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [the treating physician's opinion]

11

in order to evaluate [it], he had a duty to conduct an appropriate inquiry."). The ALJ should recontact Dr. Diamreyan on remand in order to resolve any perceived inadequacies and fully develop the record. See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should resolve the inconsistency by recontacting the medical source).

Although the ALJ in the decision agreed with the consultative psychiatric evaluator's opinion that plaintiff did not have a severe mental impairment [AR at 39, 219-26], the ALJ's reliance on that opinion, without properly considering the opinion of Dr. Diamreyan, is inadequate. The ALJ may only give less weight to a treating physician's opinion that conflicts with that of another physician if the ALJ provides sufficient specific and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Here, the ALJ did not provide legally sufficient reasons for his rejection of Dr. Diamreyan's opinion. Generally, more weight is given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). As discussed above, Dr. Diamreyan treated plaintiff for well over two years, performed mental status examinations of plaintiff, and prescribed psychotropic medications to plaintiff. See 20 C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received). Based on the length of the treatment relationship and Dr. Diamreyan's experience with plaintiff, Dr. Diamreyan

had the broadest range of knowledge regarding plaintiff's mental condition, which is supported by the treatment records. See Smolen, 80 F.3d at 1279; see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.").

The ALJ's failure to provide legally sufficient reasons that are supported by substantial evidence for discounting Dr. Diamreyan's opinion regarding plaintiff's mental condition warrants remand. See Embrey, 849 F.2d at 422 (in disregarding the findings of a treating physician, the ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects"); see, e.g., Nelson v. Barnhart, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) ("Where an ALJ fails to 'give sufficiently specific reasons for rejecting the conclusion of [a physician],' it is proper to remand the matter for 'proper consideration of the physicians' evidence.'") (brackets in original) (citation omitted).

Plaintiff further contends that "the ALJ failed to properly consider the severity of plaintiff's depression and mental impairment." Joint Stip. at 11-12. A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520, 416.920. Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Bowen v. Yuckert, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work). In light of the Court's conclusion that the ALJ failed to properly consider the opinion of

/
/
/

13

Dr. Diamreyan concerning plaintiff's mental condition, the ALJ is instructed on remand to reconsider the severity of plaintiff's mental impairment at step two of the sequential analysis.[13]

### VI.
### REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider Dr. Diamreyan's opinion. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: June 10, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[13] As the ALJ's consideration on remand of the treating physician's opinion and the severity of plaintiff's mental impairment may impact the remaining issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues at this time.